TATE, Judge.
I respectfully dissent.
The majority holds that the plaintiff did not bear his burden of proof that at the time of the accident some of the lumber from the demolition job was intended for repair of his employer’s filling station business, admittedly hazardous under the compensation act. If such was the case, it is agreed *450 that under Speed v. Page, 222 La. 529, 62 So.2d 824, plaintiff would recover.
In the present instance, plaintiff’s employer, Hiram Fuselier, and his employer’s wife, Mrs. Fuselier (the son-in-law and daughter of plaintiff, admittedly), testified that from the first before the accident some of the lumber was intended for repairs of the employer’s filling station, although the testimony of Fuselier himself in this respect is somewhat ambiguous.[1] (However, this testimony is not contradicted, and I feel that the plaintiff has borne his burden of proof.
This proof is disputed only by inference and innuendo.
The fact that Fuselier’s written statement (given to his adjuster at the time compensation was being paid to plaintiff four months after the accident) did not mention, either to affirm or to deny, that such lumber was intended to be used in repairs of the filling station is to me singularly unpersuasive as indicating a contrary intention, especially since Fuselier and his wife both testified under oath and without contradiction that the statement was taken down by-defendant’s adjuster based on replies by the insured to the adjuster’s questions and that they would have told the adjuster that some of the lumber was used and intended for business repairs if he had asked. Defendant further failed to produce the adjuster to subject him to cross-examination. As Mrs. Fuselier testified regarding the use of such lumber for business repairs, “he did not ask me, but if he had looked he could have seen it was being used for repairs.”
Because the employer did not utilize such materials for filling station repairs for eight months and after suit was filed, is not in my opinion determinative of his intention at the time of accident; any more than does his failure to date to use any of such materials for construction of a personal residence (including during the four months when compensation was paid and there was no suspicion that liability would be denied by his insurer) prove a contrary intention at the time of the accident. It may well be that the employer’s repair and construction activities occur when his other businesses are slack, or that he delayed the repairs or construction work for a multitude of other reasons.
If it were the employer’s intention at the time of the accident to utilize at least some of the materials from the demolished building for filling station repairs, it is difficult to say what other testimony plaintiff could have produced beyond the testimony of the employer and his wife. The fact that plaintiff is the father-in-law of the employer did not necessarily impart to him knowledge of his son-in-law’s intentions as to every single facet of the latter’s businesses.
The plaintiff does not have the burden of proving beyond a reasonable doubt, but *451 only by a preponderance of the evidence that his employer intended such lumber for ■ filling station use. For us to ignore this sworn testimony of those people in the world most likely to know their own intention, is to taint sworn testimony with suspicion of perjury on mere speculation and inference.
I further feel that determination whether the employment of this injured workman was subject to our compensation act need not in this case depend upon the employer’s subjective intention at the time of the accident.
It is proved without denial that for about three years, as shown also by audits made by the insurer itself for a portion of that time, Fuselier had paid insurance premiums to defendant, Globe Indemnity Company, based upon his being engaged both in the filling station business and in carpentry or the wrecking of buildings — in short, in the construction business. There is uncontra-dicted testimony that Fuselier had engaged construction employees, including plaintiff, on various other occasions to make repairs to all the business properties presently or formerly owned by him and to construct an addition to one of the rental buildings owned by him. In fact, simultaneously with demolition of the trade school a new storeroom addition was built by the same employees with some of the materials for another business property (a saloon) owned by the employer.
Thus the construction activities of Fu-selier involved in repairs and construction of his business premises were a regular part of his economic activities. These construction activities, hazardous per se under LSA-R.S. 23:1035 wben engaged in as a business, were no less a part of the employer’s trade, business, or occupation because used as a means of making money by the regular and recurrent repairs and additions to his own business properties, than if used as a means of making money by repairs for a price to the property of another.
It seems to me that the words of Chief Justice Fournet in another of his forceful opinions as reported at Speed v. Page, 222 La. 529, 62 So.2d 824, at page 827, with regard to the jurisprudence (specifically referring to the Shipp and Caldwell cases cited by the majority in support of their .conclusion), concerning an occasional worker employed in repairs, construction or demolition activities incident to the employer’s regular trade, business or occupation, are applicable here:
“It would appear that much of this confusion and lack of harmony stems from pronouncements of this Court, made without citations of authority, without due consideration of the object and purpose of the Act, and in total disregard of the admonition of the lawmakers that its provisions should be liberally construed in favor of the employee.”
For the above reasons, I respectfully dissent from the conclusion of the majority that the employer’s business at the time of the accident did not subject him to coverage of the compensation act insofar as this crippled employee is concerned.
Rehearing denied.
TATE, J., dissenting.

. Testimony of Hiram Fuselier, on direct at Tr-67, lines 3 through 18.
“Q. Have you used any of that lumber in expanding your filling station?
A. Tes, sir, we put a new roofing on it.
“Q. Now, have you used any of this lumber or the materials from that demolished building for your personal use, such as your own home or anything like that? A. I don’t have a home, I’m renting.
“Q. Now, Mr. Fuselier, tell the court were you engaged in the demolition of buildings as a hobby or a past-time or were you doing it to make money? A.
It was to make money.
“Q. Then it was a business and not just your personal — A. Tes, sir, and to repair the building but what was left I was going to use it on a home.
“Q. Now, did you, in fact, use it on a home? A. No, sir, I never built a home.” (Emphasis mine.)
The majority feels that “building” in the italicized testimony, supra, refers to the shed constructed adjacent to the saloon building, which however was constructed, not “repaired.” It might be added that apparently one reason neither counsel explored this important point more thoroughly is that upon the trial, as expressed in the original opinion of the trial court awarding compensation to the injured employee, the principal issue was that of “policy coverage” and not coverage under the workmen’s compensation act itself.